UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

==================================================

ANNABELLE THOMPSON, MARC BASIST,
DENNIS KOEN, PAUL SULLIVAN, and
ROBERT DONAGHUE, individually
and on behalf of those similarly situated,

                    Plaintiffs,

v.                                                6:06-CV-0404 (NPM / GJD)

LINVATEC CORPORATION,
CONMED CORPORATION, and
CONMED CORPORATION
SEVERANCE PLAN,

                    Defendants.

==================================================

APPEARANCES                          OF COUNSEL

MOUKAWSHER & WALSH, LLC          Ian O'Neil Smith, Esq.
Attorney for Plaintiffs
21 Oak Street  Suite 209
Hartford, CT 06106

TORYANSKI LAW GROUP              Kim W. Toryanski, Esq.
Attorney for Plaintiffs
Capitol Park Plaza East
512 West Bannock, P.O. Box 893
Boise, ID 83701

MOUKAWSHER & WALSH, LLC          Thomas G. Moukawsher, Esq.
Attorney for Plaintiffs
21 Oak Street  Suite 209
Hartford, CT 06106

BOND, SCHOENECK & KING, PLLC      Jonathan B. Fellows, Esq.
Attorney for Defendants
One Lincoln Center
Syracuse, NY 13202-1355

BOND, SCHOENECK & KING, PLLC      Louis Orbach, Esq.
Attorney for Defendants
One Lincoln Center
Syracuse, NY 13202-1355

NEAL P. McCURN, Senior U.S. District Court Judge

<u>MEMORANDUM - DECISION AND ORDER</u>

This is a class action filed pursuant to 29 U.S.C. § 1001, <u>et seq.</u>, the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for

severance benefits, breach of fiduciary duty, and violation of ERISA summary

plan description ("SPD") requirements.  Currently before the court is a motion to

dismiss counts two and three of the complaint pursuant to Rule (12)(b)(6) of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P") (Doc. No. 8), and a motion for

summary judgment on count one of the complaint pursuant to Fed. R. Civ. P. Rule

56 (Doc. No. 24 ) filed by Linvatec Corporation ("Linvatec") ConMed

Corporation ("ConMed"), and ConMed Corporation Severance Plan ("severance

plan") (collectively, "defendants").   Plaintiffs Annabelle Thompson

("Thompson"), Marc Basist ("Basist"), Dennis Koen ("Koen"), Paul Sullivan

("Sullivan"), and Robert Donaghue ("Donaghue") (collectively, "plaintiffs") have

filed a motion to certify the class pursuant to Fed. R. Civ. P. Rule 23 (Doc. No. 23).  In the interest of judicial economy, the court will decide all motions before it in this memorandum.  For the reasons set forth below, the defendants' motions will be denied, and the plaintiffs' motion to certify the class will be granted.

## I.    FACTS

The following facts have been taken from the complaint and are considered true for the purposes of the defendants' motions to dismiss and for summary judgment, as well as the plaintiffs' motion for class certification.  ConMed is a New York corporation headquartered in Utica, New York.  In December of 1997, ConMed bought surgical instrument manufacturer Linvatec,[1] a Florida corporation, from Bristol Myers Squibb ("BMS").  Plaintiffs are former Linvatec employees and sales representatives for Linvatec products.  Plaintiffs were part of an internal sales division which comprised approximately 160 employees inclusive of plaintiffs.  Plaintiffs continued to be employed by Linvatec's sales division until March 31, 2003.

In early 2000, Linvatec began laying off employees in its sales division,

---

[1]      Linvatec manufactures and markets surgical instruments used in general surgery, otolaryngology (ear, nose and throat) surgeries, OB-Gyn endoscopic surgeries, and orthopedic arthroscopic surgeries, such as reconstruction of the knee, shoulder, wrist and ankle.  Linvatec's products are marketed all over the world. Complaint, ¶ 20.

terminating at least thirty seven employees, and paying severance benefits to at least thirty one of the terminated employees under the terms of a severance plan known as the ConMed Corporation Severance Plan (the "severance plan"). In 2001, at least three sales employees were terminated, and at least one individual received severance plan benefits. In 2002, four sales division employees were terminated with severance plan benefits.

On March 31, 2003, Linvatec implemented a plan to outsource its sales division, and laid off the remaining members of its internal sales force. Gathering its nationwide sales force in St. Petersburg, Florida, Linvatec announced that it would be terminating the sales team's employment with Linvatec within two weeks. Linvatec gave each sales force member a termination letter, which also informed the terminated employee that a new manufacturer's representative would be taking over sales for them. The employees were then introduced to one of their co-workers, and were told that the co-worker was also being laid off but would be the company's new manufacturer's representative. The new manufacturer's representative then provided a proposed contract to the now-terminated sales representative, said contract purporting to be a job offer as an independent contractor/sales representative with the now-outsourced sales division. The sales representatives were urged to accept or reject the contract on the spot. The

4

complaint alleges that the job offers were illusory, didn't pay a salary, included no binding commission rates, no benefits, no sales territory, and required the laid off employees to invest their own money in inventory.  When certain laid off plaintiffs declined to work for their colleagues' new venture, they asked corporate officials for severance benefits and were told that they weren't eligible for severance because they had received immediate job offers.  Under the terms of the severance plan, benefits are not paid following the sale of the corporation's business assets if an otherwise eligible employee is offered employment by the acquirer of such assets.

The complaint also alleges that Conmed failed to give covered Linvatec employees SPDs of severance plan benefits when Conmed bought Linvatec.  At all times relevant to this action, ConMed and Linvatec have been employers within the meaning of 29 U.S.C. § 1002(5); plan administrators as defined in 29 U.S.C. § 1002(16)(A); and fiduciaries as defined in 29 U.S.C. § 1002(21)(A).

## II.    DISCUSSION

### A.    Class Certification

The court will first address the plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23.  In addition to seeking class certification, the five named plaintiffs seek to be certified as the class representatives, and to have this

court approve the law firm of Moukawsher, & Walsh, LLC, as counsel for the plaintiff class.  In their complaint, plaintiffs allege that they are bringing this action as a class action on behalf of any and all persons who are "former Linvatec sales representatives whose employment with Linvatec was involuntarily terminated in 2003 and who did not receive severance benefits from the defendants."  Complaint at ¶ 14.  Plaintiffs state that the proposed class covers approximately ninety individuals, a class so numerous that joinder of all members is impracticable (Id. at ¶ 16), and the claims of the named representatives are typical of the claims of the class (Id. at ¶ 17).  Plaintiffs assert that the action is maintainable as a class action under Rule 23(b)(1) because the prosecution of separate actions would create the risk of inconsistent or varying adjudications, or adjudications which might substantially impair or impede the ability of individual members of the class to protect their interests.  Plaintiffs also assert that the action is maintainable under Rule 23(b)(2) because the defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and other equitable relief in favor of the class.

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle and

Jacquelin, 417 U.S. 156, 178 (1974).   In 2006, the Second Circuit addressed the

heretofore "surprisingly unsettled"[2] issue in this circuit as to what standards

govern a district judge in adjudicating a motion for class certification under Rule

23.  The Court of Appeals set forth the following standard:

> (1) a district judge may certify a class only after making
> determinations that each of the Rule 23 requirements
> have been met; (2) such determinations can be made only
> if the judge resolves factual disputes relevant to each
> Rule 23 requirement and finds that whatever underlying
> facts are relevant to a particular Rule 23 requirement
> have been established and is persuaded to rule, based on
> the relevant facts and the applicable legal standard, that
> the requirement is met; (3) the obligation to make such
> determinations is not lessened by overlap between a Rule
> 23 requirement and a merits issue, even a merits issue
> that is identical with a Rule 23 requirement; (4) in
> making such determinations, a district judge should not
> assess any aspect of the merits unrelated to a Rule 23
> requirement; and (5) a district judge has ample discretion
> to circumscribe both the extent of the discovery
> concerning Rule 23 requirements and the extent of a
> hearing to determine whether such requirements are met
> in order to assure that a class certification motion does
> not become a pretext for a partial trial of the merits.

In re Initial Public Offering Securities Litigation, 471 F.3d 24, 41 (2d Cir. 2006)
(petition for rehearing denied, 483 F.3d 70 (2d Cir. 2007)).

It is important to note that "the determination as to a Rule 23 requirement is

made only for purposes of class certification and is not binding on the trier of

---

[2]     In re Initial Public Offering Securities Litigation , 471 F.3d at 26.

facts, even if that trier is the class certification judge." Id.  "A district judge is to

assess all of the relevant evidence admitted at the class certification stage, and

determine whether each Rule 23 requirement has been met, just as the judge would

resolve a dispute about any other prerequisite for a continuing lawsuit." Id. at 42.

An order certifying a class "may be altered or amended before final

judgment." Fed.R.Civ.P. 23(c)(1)(C).  "A district court also has the discretion to

decertify a class by amending the order granting the certification, 'if the court

finds that certification should not have been granted or is no longer appropriate.'"

Richards v. FleetBoston Financial Corp., 238 F.R.D. 345 (D.Conn. 2006) (citing  5

Moore's Federal Practice § 23.87 (Matthew Bender 3d ed.)).

Accordingly, in deciding the appropriateness of class certification, there is

no need for the court to address the merits of the plaintiffs' allegations to identify

putative class members.  Nor does class membership here require the court to

engage in a fact-intensive inquiry as to each potential member.  "[W]hen deciding

a motion to certify a class, the allegations in the complaint are accepted as true."

Hilton v. Wright, 235 F.R.D. 40, 51 (N.D.N.Y. 2006) (citing Shelter Realty Corp.

v. Allied Maint. Corp., 574 F.2d 656, 661 n. 15 (2d Cir. 1978).

As a threshold matter, the defendants argue that class certification should be

denied because neither the named plaintiffs nor the unnamed putative plaintiffs

have exhausted their plan remedies.  The plaintiffs counter that neither the

proposed class representatives nor the class needs to further exhaust administrative

remedies because at the time the defendants slashed their jobs, there was no plan

document or SPD that required the plaintiffs to exhaust administrative remedies.

(Doc. No. 32 at 2).  The plaintiffs assert in their complaint that they have

"exhausted any available remedies for their claims or are excused from doing do."

(Doc. No. 1 at 10).   The court finds that this is a question of fact that hinges on

what, if any, SPD was in effect at the time of the terminations, and the subsequent

interpretation of that plan, in order to determine if exhaustion of administrative

remedies was required in the instant action.  Under the standard set forth above,

and construing the materials before it at this class certification stage, the court

finds that the plaintiffs are proceeding under the belief that they have fulfilled the

exhaustion requirement.  Therefore, the court will not deny class certification on

the issue of failure to exhaust administrative remedies.  If the fruits of full

discovery reveal that class certification is not warranted, on this or any other basis,

the court may later decertify the class, or divide it into subclasses, if appropriate.

See, e.g., Lynch v. United Services Auto. Ass'n, 2007 WL1288582 at *12

(S.D.N.Y. 2007).

    The court must next consider whether plaintiffs can satisfy the explicit

9

requirements of Rule 23.  Under that rule there is a two-step analysis for

determining whether class certification is proper.  First of all, "[t]o qualify for

certification, plaintiffs must prove that the putative class action meets the four

requirements set forth in Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members
> is impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interest of the class.

In re Visa Check, 280 F.3d 124, 132-33 (2d Cir. 2001) (citations omitted).

"Additionally, a class action may be maintained only if it qualifies under at least

one of the categories provided in Rule 23(b)."  Id. at 133.

     "A court should only grant a motion to certify a proposed class if it 'is

satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

satisfied.'"  Russo v. CVS Pharmacy, Inc., 201 F.R.D. 291, 294 (D. Conn. 2001)

(quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct.

2364 (1982).  "However, the law in the Second Circuit favors the liberal

construction of Rule 23 and courts may exercise broad discretion when they

determine whether to certify a class."  Id. (citing Gary Plastic Packaging Corp. v.

Merrill Lynch, 903 F.2d 176, 179 (2d Cir. 1990)).  Moreover, "courts [should]

10

resolve all doubts about whether a class should be created in favor of

certification." In re Indus. Diamonds Antitrust Litig., 167 F.R.D. 374, 378

(S.D.N.Y. 1996).

The court will first address the four elements of Rule 23.  Plaintiffs' failure

to meet their burden on any one of these elements would obviate the need to move

to step two of the certification analysis -- satisfaction of at least one of the Rule

23(b) categories.

### (1) Numerosity

The relevant inquiry under Rule 23(a)(1) is whether the class is "so

numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

"Generally, courts will find that the numerosity requirement has been satisfied

when the class comprises 40 or more members ...."  Novella v. Westchester

County, 443 F.Supp.2d 540, 546 (S.D.N.Y. 2006).  However, "[d]etermination of

practicability depends on all the circumstances surrounding a case, not on mere

numbers."  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  "A plaintiff

need not provide a precise quantification of their class, and courts may make

common sense assumptions to support a finding of numerosity."  Edge v. C.Tech

Collections, Inc., 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (internal quotations omitted).

But, "[w]here the plaintiff's assertion of numerosity is pure speculation or bare

allegations, the motion for class certification fails." Id. (citing Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968)).

The complaint in this action, as well as the motion to certify the class, indicates that the class is comprised of over ninety members. The defendants speculate that the number is closer to seventy. Tr. 4:24-5.[3] Either number exceeds the general threshold of forty or more set forth by the Second Circuit and articulated in Edge, supra. Although the plaintiffs do not address the impracticality of the joinder of all members of the class, the court notes that the former Linvatec sales force operated nationwide, and the named plaintiffs alone reside in Idaho, Pennsylvania, Mississippi, Virginia, and Maryland, respectively. The court finds that the element of numerosity is satisfied.

### (2) Commonality

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Guiliana ("Marisol II"), 126 F.3d 372, 376 (2d Cir. 1997) (citations omitted). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims

---

[3]    Transcript of Motion argument held before this court on January 5, 2007. (Doc. No. 48).

are so interrelated that the interests of the class members will be fairly and

adequately protected in their absence.'" Id. (quoting General Telephone Co. of

Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982)).  "The commonality

requirement is met if plaintiffs' grievances share a common question of law or

fact." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir.

2001).  "However, there is no requirement that the claims of all the potential class

members . . . have every issue of law and fact in common.  An alleged common

course of conduct is sufficient to satisfy the common question requirements of

Fed. R. Civ. P 23(a)(2)."  Karen L. ex rel. Jane L. v. Physicians Health Services,

Inc., 202 F.R.D. 94, 100 (D. Conn. 2001) (citation omitted).

     ERISA cases are well-suited for class action certification pursuant to Rule

23.  "The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent

adjudications,' speaks directly to ERISA suits, because the defendants have a

statutory obligation, as well as a fiscal responsibility, to 'treat the members of the

class alike.'" In re Citigroup Pension Plan ERISA Litigation, 241F.R.D. 172, ---,

2006 WL 3770504 * 5 (S.D.N.Y. 2006) (citing Amchem Products, Inc. V.

Windsor, 521 U.S. 591, 614 (1997)).

     Here, plaintiffs assert that the only issues that have been identified in this

litigation are issues that are common to all class members, i.e., that each member

of the class will share the common legal questions of whether Linvatec breached

its fiduciary duties to the class by denying them severance benefits after

terminating them, as well as failing to provide plan recipients with an adequate

SPD. (Doc. No. 23-2 at 9).  Defendants counter that the court would need to

adjudicate individual claims for benefits in the instant case, because a class

member would suffer an injury, i.e., denial of severance, only if he or she did not

receive a genuine offer of employment. (Doc. No. 27 at 17).  Defendants also

assert that class certification would require the court to examine as many as ninety

individual job offers to determine whether the job offers were illusory.  (Id. at 18).

The court disagrees.  All members of the proposed class are former Linvatec sales

personnel who, upon termination, were offered contracts for employment with

designated manufacturer's representatives.  The court discerns no disagreement

between the parties that the proffered contracts were essentially for the purpose of

employing the terminated sales professionals as independent contractors.  For

purposes of the underlying action, the trier of fact will need to analyze the offers

of employment pursuant to the guidelines for employment set forth elsewhere in

this opinion.  The plaintiffs assert that "[t]he only thing we asked of the court is to

declare what the terms of the plan are.  Once [the court] declares what the terms of

the plan are, a person's benefits under the plan become automatic.  It's not a

14

matter of damages, it's the plan [that] says how many weeks of severance you [receive]." Tr. 12: 9-14.  The fact that Linvatec outsourced its sales operation to no less than twelve different manufacturer's representatives across the country will not defeat a finding of commonality sufficient to support class certification in this action.

### (3)  Typicality

_____"Typicality . . .  requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  <u>Marisol II</u>, 126 F.3d at 376 (internal quotation marks and citations omitted).  Typicality "does not require that the factual background of each named plaintiff's case be identical to that of all class members; rather it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  <u>Caridad v. Metro-North Commuter Railroad</u>, 191 F.3d 283, 293 (2d Cir. 1999)) (internal quotations and citations omitted).  "As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish [the] necessary typicality."  <u>In re Towers Financial Corp. v. Noteholders Litigation</u>, 177

15

F.R.D. 167, 170 (S.D.N.Y. 1977) (internal quotation marks and citation omitted).

As with the commonality requirement, the plaintiffs have established typicality.  Plaintiffs' claims all arise from the same course of events.  In addition, the named plaintiffs represent any and all former Linvatec sales force employees who took the proffered contract and subsequently left those positions [Basist and Donaghue]; those who rejected the contract outright and immediately filed for severance pay [Thompson]; those who had the offer withdrawn [Sullivan]; and those who rejected the contract but opted instead for retirement [Koen].  In addition, although their particular group is not specifically represented by the five named plaintiffs, in the event that the finder of fact ultimately finds that the contracted positions were not bona fide offers of employment and were therefore not exempted by the severance plan in effect at the time of the terminations, former Linvatec sales employees who are currently employed as independent contractors for the manufacturer's representatives may also be eligible for severance pay.

Again, defendants opposition to a finding of typicality is that individual damage claims predominate over any typical claims.  However, "named plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to  result from the same practice."  Nicholson v. Williams, 205

F.R.D. 92, 99 (E.D.N.Y. 2001) (citation omitted).  "Because typicality does not require that the class representative claims be identical to those of the class, differences in damages will not destroy typicality."  5 <u>Moore's Federal Practice</u> § 23.24[05].  Thus the fact that the named plaintiffs may have suffered different injuries from those sustained by other class members does not, as defendants suggest, undermine a finding of typicality here, where the injuries were all caused by defendants' alleged failure to, <u>inter</u> <u>alia</u>, proffer <u>bona</u> <u>fide</u> employment offers and provide a current SPD.  In light of the foregoing, the court finds that plaintiffs have met the test for typicality.

### (4) Representativeness

Under Rule 23(a)(4), a party seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement "is motivated by concerns similar to those driving commonality and typicality requirements, namely, the efficiency and fairness of class certification." <u>Marisol II</u>, 126 F.3d at 378 (citing <u>Falcon</u>, 457 U.S. at 157 n. 13).  There are two separate inquiries under Rule 23(a)(4).  The first is "that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct litigation." <u>Id.</u> (internal quotation marks and citation omitted).  "In determining the adequacy of counsel, the court looks beyond

reputation built upon past practice and examines counsel's competence displayed by present performance." Towers Financial Corp., 177 F.R.D. at 171 (internal quotation marks and citation omitted). The second requirement is that "[p]laintiffs must . . . demonstrate that there is no conflict of interest between the named plaintiffs and other members of the class." Marisol II, 126 F.3d at 378 (citation omitted).

Both of these requirements are met here. Given the experience of the Moukawsher law firm in litigating large class action lawsuits, as detailed in the motion to certify class (Doc. No. 23-2) and the Moukawsher declaration (Doc. No. 23-11), and Attorney Moukawsher's competence both at oral argument and in submission of briefs to the court, the court finds that this firm is qualified to adequately represent the interests of the proposed plaintiff class and to conduct this litigation. Thus, the first prong of Rule 23(a)(4) is satisfied here.

As to the second prong, the court has before it sworn declarations from the named plaintiffs that (1) they are all former employees of Linvatec's sales division who were outsourced in a company layoff effective March 31, 2003 without severance pay; (2) they are committed to having the issues set forth in the complaint decided by bringing this suit; (3) their interests are not antagonistic to other class members, nor do they have conflicting interests; and (4) they are

interested in a speedy, class wide resolution of these issues.  In addition, the defendants do not argue that there are any conflicts of interest between the named plaintiffs and other members of the class.

Even though there may be some differences among the named plaintiffs and other class members in terms of the nature of the claimed injuries and the damages which they may ultimately recover, all class members have the same interest in litigating the claims which this action presents.  See Maneely v. Vity of Newburgh, 208 F.R.D. 69, 76 (S.D.N.Y. 2002).  Accordingly, irrespective of any differences in damages, the court finds that the named plaintiffs are fit to serve as class representatives.  Plaintiffs have thus met the fourth requirement of Rule 23(a).

Although plaintiffs have met all four requirements of Rule 23(a), as discussed above, that does not end the court's inquiry regarding the propriety of class certification.  Plaintiffs still must qualify under one of the subsections of Rule 23(b), and they are attempting to qualify under subsections (1) and (2) of that rule.[4]

---

[4]     While the plaintiffs assert that the action satisfies the criteria of all three subsections of 23(b), they request certification only under the first two because of the procedural complications of Rule 23(b)(3).

**B.  Rule 23(b)(1) and (2)**

Rule 23(b) states in pertinent part as follows:

(b) Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with the respect to the class as a whole ....

Fed. R. Civ. P. Rule 23 (West 2007).

The defendants assert that no class can be certified under subsection (b)(1) because a party seeking class certification under Rule 23(b)(1) must, at the outset, establish the likelihood that multiple actions involving the same subject matter will be brought in the absence of a class action.  They argue that the risk of

multiple actions must be real, not hypothetical, and that the party seeking class certification must demonstrate a likelihood that separate actions will in fact be brought if a class action is not permitted. (Doc. No. 22).  Defendants further argue that nearly four years after the termination of the class of sales representatives, only two people have filed state court lawsuits claiming breach of contract, and "now we have this lawsuit with five people." Tr. 4:13-16.

The plaintiffs respond, and the court, after careful review concurs, that "if ... this small group of plaintiffs who were asked to be representatives wins, it's hard to believe that a whole bunch of other lawsuits wouldn't immediately follow. Class certification would give finality to this lawsuit that's now [being] litigated, this is the third lawsuit." Tr. 8:2-7.  The court, after a thorough review of the materials before it, finds that the risk of multiple actions in the event that the plaintiffs are successful is real, and that the plaintiffs have met their burden of demonstrating that separate actions will in fact be brought if a class action does not give finality to this issue, pursuant to Rule 23(b)(1).

Defendants also argue (citing, inter alia, Durrett v. John Deere Co., 150 F.R.D. 55, 559 (N.D. Tex. 1993) and Abramovitz v. Ahern, 96 F.R.D. 208, 215 (D. Conn 1982)) that certification is inappropriate under both Rule 23 (b)(1) or 23 (b)(2) because the plaintiffs seek monetary damages, and that both subsections

only cover cases for equitable relief.   Defendants cite a Second Circuit decision

for the premise that Rule 23(b)(2) "was never intended to cover cases like the

instant one where the primary claim is for damages, but is only applicable where

the relief sought is exclusively or predominantly injunctive or declaratory." <u>Eisen

v. Carlisle & Jacquelin</u>, 391 F.2 555, 564 (2d Cir. 1968).  The defendants also cite

<u>Robinson v. Metro-North Commuter R.R.</u> for the premise that "[i]nsignificant

sham requests for injunctive relief should not provide cover for (b)(2) certification

of claims that are brought essentially for monetary recovery."  267 F.3d at 164.

As an initial matter, the plaintiffs argue, and the court concurs, that the

plaintiffs are not seeking money damages, but are specifically seeking the

severance benefits they claim were unlawfully denied them under ERISA.  In the

case at bar, the plaintiffs argue that equitable relief could take the form of, for

example, "a declaration of the terms of the plan and how it applies to the offer of

non-comparable independent contractor work without a true asset sale.  It could

also take the form of an injunction altering plan records to show the plaintiffs

qualify for severance," citing similar scenarios approved by the Ninth Circuit, and

in the District of Connecticut.[5]  (Doc. No. 32 at 4).

---

[5]     <u>See</u>, <u>e.g.</u>, <u>Mathews v. Chevron</u>, 362 F.3d 1172 (9th Cir. 2004); <u>Broga v. Northeast Utilities</u>, 1999 WL 33483581 (D. Conn. 1999).

The plaintiffs assert that "[t]he relief sought need not be equitable in nature: when both equitable and monetary relief are sought, the district court may still certify the class under subsection (b)(2) if it determines that certification is appropriate 'in light of the relative importance of remedies sought, given all the facts and circumstances of the case,'" citing Richards v. FleetBoston, 235 F.R.D. at 173-4.  The Richards court also states that there, as here, "[t]he defendants argue that 'the only real interest of these former participants [under the plan] is the possibility of obtaining monetary relief.'  These objections do not prevent (b)(2) certification.  For purposes of subsection (b)(2), an injunction requiring the payment of monies unlawfully withheld in the past may be considered injunctive relief." 235 F.R.D. at 174.

The defendants also argue that class certification under subsection (b)(2) is precluded by Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct 708 (2002), which held that "[a]lmost invariably, ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for their loss from the defendant's breach of legal duty." Id. at 210.  However, this court reads Great-West for the premise that under the circumstances presented in the

case at bar, "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. at 213. "[F]or restitution to lie in equity, the action generally must not seek to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 714-15. Great-West was an action for specific performance of a reimbursement provision of a particular ERISA plan, and to compel the plan beneficiary who had recovered from an alleged third-party tortfeasor to make restitution to the plan for benefits it had paid. The court does not find that Great-West precludes class certification under the facts and circumstances in the instant case.

Accordingly, for the reasons set forth supra, the plaintiffs' motion to certify the class will be granted. The class shall consist of former Linvatec sales representatives whose employment with Linvatec was involuntarily terminated in 2003, and who did not receive severance benefits from the defendants.

**B.    Motion To Dismiss Standard**

The defendants seek to dismiss counts two and three of the complaint. The function of a motion to dismiss is "merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807 (1994).  In addition, the allegations of the complaint should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct 1683 (1973).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In count two of the complaint, the plaintiffs allege that the defendants Linvatec and Conmed breached their ERISA § 404 fiduciary duties by falsely denying benefits under the sale of business assets exception, and by offering illusory job offers to the plaintiffs so as to wrongfully deprive them of severance benefits under the terms of the severance plan.  The defendants argue that count two of the complaint must be dismissed because it fails to state a claim for appropriate equitable relief arising under ERISA § 502(a)(3).  Defendants assert that the claim for relief is not appropriate because it merely repackages the claim for benefits asserted in count one, and because the claim is, at its core, a claim for

25

monetary payment of benefits.  Defendants further argue that count two merely repackages the plaintiffs' benefits claim as a breach of fiduciary duty claim.

The seminal case on this issue is <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 116 S.Ct. 1065 (1996).  In <u>Varity</u>, the Court interpreted ERISA § 502's overall structure as "suggest[ing] that these 'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." <u>Id.</u> at 512.  The Court held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate."  <u>Id.</u> at 515 (internal quotations omitted).  In <u>Devlin v. Empire Blue Cross & Blue Shield</u>, the Second Circuit held that "[t]he Supreme Court [in <u>Varity</u>] further noted that, given ERISA's requirement that fiduciaries act solely in the interest of the participants and beneficiaries, 29 U.S.C. § 1104 (a)(1), it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy.  We note that should plaintiffs' claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary claim is their only remaining remedy." 274 F.3d 76, 89 (2d Cir. 2001) (internal quotations omitted).

26

The plaintiffs argue that "[t]he problem is that the defendants' argument begs the question of whether adequate relief is available under § 502(a)(1)(b) in light of the facts of this case.  The plaintiffs agree that if they are afforded an adequate remedy based upon their claims under § 502 (a)(1)(b) that they cannot also be given relief under § 502(a)(3)." (Doc. No. 12 at 3).  The plaintiffs assert, and the court concurs, that it is not possible at this stage of the proceedings to discern whether the plaintiffs have an adequate § 502 (a)(1)(b) remedy available to them.  Thus, the court cannot say with certainty that the plaintiffs fail to state a claim on count two of the complaint.

In count three, the plaintiffs complain that defendants Linvatec and ConMed likely prejudiced them by failing to provide Linvatec employees a summary plan description of the severance plan in violation of the requirements for SPDs set forth in ERISA § 102 and its implementing regulations found in 29 C.F.R. 2520.102.  The defendants counter that the complaint states no factual allegations to suggest that the plaintiffs were likely prejudiced in any way by the alleged failure to supply them with an SPD, and thus it fails to state a claim.  The defendants argue that under either of ERISA § 102 enforcement provisions, § 502(a)(1)(B) or § 502(a)(3), the plaintiffs would have to supply well-pleaded factual allegations sufficient to support a claim of likely prejudice. (Doc. No. 8 at

13).

"A deficient SPD does not by itself mean that [a plaintiff] prevails; to recover in this Circuit, a plaintiff must demonstrate 'likely prejudice' resulting from a deficient SPD."  In other words, a plaintiff "must show that he was likely to have been harmed as a result of a deficient SPD."  <u>Wilkins v. Mason Tenders Dist. Council Pension Fund</u>, 445 F.3d 572, 585 (2d Cir. 2006).  "The question here is whether it is probable that the plaintiff's benefits would have been different had the SPD been adequate." <u>Id.</u>

In the case at bar, the plaintiffs allege that the defendants never gave Linvatec employees an ERISA-required summary plan description of the severance plan.  The standard for recovery pursuant to a deficient SPD in this Circuit, as set forth above, is likely prejudice.  The pleading system embodied in Fed.R.Civ.P. Rule 8 is a liberal one.  There is generally no heightened pleading standard required for ERISA claims absent claims of fraud in this Circuit,[6] and the court finds that the complaint provides the defendants with fair notice of the claim.

---

[6]     See <u>e.g.</u> <u>Agway, Inc. Employee's 401(k) Thrift Investment Plan v. Magnuson</u>, 2006 WL 2934391 at * 8 (N.D.N.Y. 2006) ("Since the primary thrust of plaintiffs' ERISA claims entail[] alleged breaches by the defendants of their fiduciary duties and their having engaged in prohibited transactions, I recommend against applying the heightened pleading requirements of Rule 9(b).") ; <u>See</u> also <u>In re Xerox Corp. ERISA Litigation</u>, --- F.Supp.2d ----, 2007 WL 1137373 at * 8 (D.Conn. 2007) ("Only a breach of fiduciary claim which includes a fraud claim implicates Rule 9(b).") (internal quotations and citations omitted).

The court will deny the defendants' motion to dismiss count three of the complaint for failure to state a claim.

### C.   Summary Judgment Standard

Finally, the defendants have moved for summary judgment on the first count of the complaint.  A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004).  "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]"  See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of

29

material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), (citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

     In the case at bar, the court discerns three material issues of fact inherent in count one of the complaint.  First, there is a dispute regarding what, if any, severance policy was in effect at the time of the terminations.  The summary judgment record reflects evidence which runs the gamut from the defendants initially claiming that no severance plan was in effect, to evidence avowing that the severance plan offered by BMS was continued for a finite period of time.  There are assertions that there was a Linvatec severance plan in effect, conversely a ConMed severance plan, and also an Important Plan Update which was distributed to Linvatec employees.  The plaintiffs state that they were not given an SPD.  The defendants assert that the employees received the BMS plan document, and that Linvatec employees were told that the BMS plan would remain the same.  TR. 15: 7-15.  The plaintiffs go so far as to state that the defendants "made up" a

severance plan solely for the purpose of this litigation.  Tr. 14:2-6.  Despite the rhetoric, plaintiffs and defendants alike appear to rely on a severance plan document which sets forth the exception to paying severance when there has been a sale of assets and job offers have been extended to the terminated parties. Whether that severance plan was the BMS SPD with its sale of assets exception, the Conmed SPD with its sale of assets exception (TR. 16:1-4), or some other plan entirely is a question for the trier of fact.

Based on the aforementioned sale of assets exception, there is a second question regarding the sale of business assets, if any, that preceded the termination of all members of Linvatec's sales division on March 31, 2003.  The plaintiffs dispute that the transfer of the nationwide sales force's sample inventory was a "sale of assets" sufficient to trigger the exception to paying severance benefits. The defendants counter that the manufacturer's representatives agreed to buy the sample inventory for $8 million (Tr. 20:1-2), which the defendants "clearly believe" constitutes a sale of some or all of the company's business assets. Tr. 20:12-13.  Again, this is a question for the trier of fact, and the court declines to grant summary judgment on this issue.

Third, there is a question of whether the independent contractor positions offered to the newly terminated Linvatec sales force are considered <u>bona fide</u> job

offers pursuant to the exemption in the severance policy.  In <u>Nationwide Mutual</u>

<u>Insurance Company, et al. v. Darden</u>, 503 U.S. 318, 323 (1992), the Supreme

Court addressed the definition of "employee" in an ERISA case.

> We have often been asked to construe the meaning of
> "employee" where the statute containing the term does
> not helpfully define it . . . In the past, when Congress has
> used the term "employee" without defining it, we have
> concluded that Congress intended to describe the
> conventional master-servant relationship as understood
> by common-law agency doctrine . . . ERISA's nominal
> definition of "employee" as "any individual employed by
> an employer," 29 U.S.C. § 1002(6), is completely
> circular and explains nothing . . . Thus, we adopt a
> common-law test for who qualifies as an "employee"
> under ERISA, a test we most recently summarized in
> Reid:[7]
>
> In determining whether a hired party is an employee
> under the general common law of agency, we consider
> the hiring party's right to control the manner and means
> by which the product is accomplished.  Among the other
> factors relevant to this inquiry are the skill required; the
> source of the instrumentalities and tools; the location of
> the work; the duration of the relationship between the
> parties; whether the hiring party has the right to assign
> additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to
> work; the method of payment; the hired party's role in
> hiring and paying assistants; whether the work is part of
> the regular business of the hiring party; whether the
> hiring party is in business; the provision of employee

---

[7]     <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 740, 109 S.Ct.
2166 (1989).

> benefits; and the tax treatment of the hired party.
>
> Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.

Nationwide, 503 U.S. at 323-24 (internal citations and quotations omitted).

The court has received conflicting information from the parties regarding whether the Linvatec sales force members were offered valid job offers, or simply offers to be independent contractors and nothing more. In its attempt to apply the Darden test outlined above, the court concurs with the plaintiffs that the court does not have sufficient information before it on this issue, and more discovery is needed before the court could adequately rule on whether the offer of employment to the terminated Linvatec sales force is a bona fide offer of employment, or a ploy to trigger the exception for paying severance to the terminated workers. This is indeed a genuine issue of material fact that precludes this court from granting the motion for summary judgment on this issue.

Resolving all ambiguities and drawing all permissible factual inferences in favor of the plaintiffs, against whom summary judgment is sought, the court cannot at this stage of the litigation declare with certainty that reasonable minds could not differ as to the import of the evidence. The questions raised are

questions for the trier of fact.  The court finds that the defendants have not demonstrated the absence of a genuine issue of material fact in this action. Accordingly, the court will deny the defendants' motion for summary judgment on count one of the complaint.

## III.   CONCLUSION

For the reasons set forth above, the plaintiffs' motion to certify the class (Doc. No. 23) is hereby GRANTED.  The defendants' motion to dismiss (Doc. No. 8) and the defendants' motion for summary judgment (Doc. No. 24) are hereby DENIED.

SO ORDERED.

May 22,  2007

_____
Neal P. McCurn
Senior  U.S. District Judge